# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
Assigned on Briefs March 30, 2010 at Knoxville

## STATE OF TENNESSEE v. JAMES ARTHUR JOHNSON

**Appeal from the Criminal Court for Davidson County**
**No. 2007-A-129     Mark J. Fishburn, Judge**

_____

**No. M2009-01147-CCA-R3-CD - Filed August 24, 2010**

_____

The Defendant, James Arthur Johnson, was charged with two counts of premeditated first-degree murder, two counts of felony murder, and one count of aggravated robbery for events that occurred on the evening of June 18, 2006. Co-defendant Rodney Lenier Williams was also charged in all five counts, but his case was severed from the Defendant's case before trial. A jury sitting in the Criminal Court for Davidson County found the Defendant not guilty of the two counts of premeditated first-degree murder, guilty of the two counts of felony murder, and guilty of the count of aggravated robbery. The Defendant was given concurrent life sentences for the felony murder convictions. For the aggravated robbery conviction, the Defendant was given an eleven year sentence to run consecutively to the two life sentences. In this appeal as of right, the Defendant argues (1) that the evidence was insufficient to sustain his convictions, (2) that the trial court erred in allowing a non-expert witness to give his opinion, and (3) that the trial court erred in sentencing the Defendant. Following our review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court are Affirmed**.

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and CAMILLE R. MCMULLEN, JJ., joined.

David M. Hopkins, Nashville, Tennessee, attorney for appellant, James Arthur Johnson.

Robert E. Cooper, Jr., Attorney General and Reporter; Lacy Wilber, Assistant Attorney General; Victor S. Johnson III, District Attorney General; and Robert McGuire, Assistant District Attorney General, attorneys for appellee, State of Tennessee.

## OPINION

On the night of June 18, 2006, Leonard Swann of the Robertson County Sheriff's Department was working an off-duty security assignment at Kroger grocery store on Eighth Avenue and Monroe Street in Nashville. As he was standing outside the store, Swann heard an estimated eleven to thirteen gunshots fired, and seconds later, he observed Marcus Edmondson running across the Kroger parking lot holding a handgun. Swann testified that Edmondson was bleeding and bending over as he ran and repetitively stating that he had been shot. Edmondson then fell in a grassy area at the end of the parking lot, and an ambulance arrived shortly thereafter. Edmondson died at Vanderbilt Medical Center as a result of his injuries.

After the ambulance departed with Edmondson, Detective Warren Fleak of the Nashville Metropolitan Police Department arrived at the scene to find the deceased body of Ricky McCorkle in an alleyway behind the Kroger. About twenty-five feet away from McCorkle's body, thirteen .22 caliber cartridge casings were found on the ground. Detective Fleak stated that officers found a water bottle and a Swisher Sweet cigar box containing marijuana when approaching the front of the Kroger from the location of McCorkle's body. In front of the store, officers found a Lorcin 380 semiautomatic handgun, an empty magazine belonging to that gun, and a cell phone.

Detective Leonard Peck of the Nashville Metropolitan Police Department was assigned to investigate the scene at approximately 9:30 P.M. on the night of the incident. Detective Peck returned to the scene the following morning and found McCorkle's wallet and driver's license. After searching McCorkle's phone records, Detective Peck discovered that McCorkle had dialed the phone number of Rodney Williams several times directly before the time of the shootings. After interviewing Williams, Detective Peck developed the Defendant as a suspect. After receiving a message that Detective Peck wished to speak to him, the Defendant voluntarily went to the police station.

In a recorded interview that was played for the jury, the Defendant told Detective Peck that Rodney Williams had called the victims and made plans to meet them behind the Kroger to purchase drugs. The Defendant stated that the original plan was to purchase drugs and that he had no intention to harm anybody. However, he also stated that Williams discussed robbing the victims for their drugs and money before arriving at the Kroger. The Defendant stated that he was to be the lookout and hoped to be paid for his role. Specifically, after being asked, "So, when Rodney did the robbery, you were hoping to get paid from the robbery," the Defendant answered, "Yes." At trial, the State asked Detective Peck what that statement meant to him, and over objection by the Defendant, Detective Peck answered, "That means to me that he's a willing participant."

The Defendant stated that after he arrived at the Kroger parking lot, Williams left the car with the .22 caliber rifle while he remained in the vehicle. The Defendant then heard several gunshots, and Williams returned to the car with McCorkle's wallet and stated, "They tried to kill me." After leaving the Kroger, Williams left the rifle with the Defendant, who gave it to Christopher Phillips. Although Phillips did not possess the weapon when questioned, officers discovered the rifle wrapped in a plastic bag in a dumpster off Jefferson Street.

Dr. Thomas Deering, assistant medical examiner for the State Medical Examiner's Office in Nashville, performed autopsies on both of the victims' bodies and served as a witness for the State at trial. Dr. Deering testified that McCorkle had two gunshot wounds on the lower left side of his back. McCorkle had no exit wounds. One bullet had passed through the victim's spinal cord and lodged in his right lung, while the other passed through the left lung, heart, and into the chest plate. Dr. Deering stated that the bullet that passed through the spinal cord was possibly fatal and that the bullet to the heart was certainly fatal. Dr. Deering concluded that McCorkle had been shot in the back and that the cause of his death was multiple gunshot wounds. Dr. Deering added that McCorkle's blood tested positive for THC, indicating that he had recently used marijuana.

Dr. Deering stated that Edmondson had one gunshot wound on his right lower back, two gunshot wounds on his scrotum, and one gunshot wound on his thigh. Dr. Deering had difficulty analyzing some of Edmondson's injuries because surgeons had altered many of his organs in an attempt to save him. However, Dr. Deering did find two bullets in the victim's abdomen and concluded that it appeared the victim had bled to death after being shot in the back. Like McCorkle, Edmondson also tested positive for THC.

Steve Scott, a ballistics and firearms identification expert who works for the Tennessee Bureau of Investigation, examined both the Lorcin handgun found at the scene and the .22 rifle found in the dumpster off Jefferson Street. Scott also received five bullets taken from the bodies of the victims and the thirteen cartridge casings found at the crime scene. Although Scott received the Lorcin with one cartridge, he was unable to test fire the pistol due to a buildup of oil and lubricant that would not allow it to properly function. Scott was able to test fire the .22 rifle. Due to the cheap quality of the rifle and the soft nature of the .22 caliber bullets, Scott was unable to determine whether the bullets taken from the victims' bodies were shot from the rifle. However, Scott was able to determine with "no doubt at all" that the thirteen shell casings found at the scene were fired from the rifle.

At the sentencing hearing on March 20, 2009, both of the victims' mothers and Ricky McCorkle's brother made victim impact statements, all requesting that the Defendant receive

the maximum penalty for his crimes. The Defendant also made a statement, apologizing to the victims' families and asking for their forgiveness.

The court determined that concurrent life sentences were appropriate for the felony murder convictions. In determining the sentence for the aggravated robbery and whether to impose consecutive sentences, the court considered the victim impact statements, the Defendant's allocution, Tennessee Code Annotated section 40-35-103, the characteristics of the criminal conduct, and the evidence of mitigating and enhancing factors.

The court cited the Defendant's previous criminal history, including being declared delinquent as a juvenile on a felony drug case, five misdemeanor convictions as an adult, and six to eight arrests in cases that were dismissed or retired, as an enhancing factor. Although the Defendant disagreed, the court also found that he was on probation at the time of the offense and considered that as another enhancing factor. Further, the court stated that the Defendant had no hesitation about committing a crime when the risk of human life was high. The court considered the Defendant's remorse at the sentencing hearing and his assistance in solving the crime as mitigating factors. The trial court sentenced the Defendant to eleven years for the aggravated robbery conviction. In ordering that the sentence should be served consecutively to the felony murder convictions, the court stated that extended confinement was necessary to protect society from the Defendant's antisocial behavior.

The Defendant challenges the sufficiency of the convicting evidence, the length of his aggravated robbery sentence, and the imposition of consecutive sentences in his case. Additionally, he argues that the trial court erred in allowing Detective Peck to give his opinion as to the meaning of one of the Defendant's statements.

ANALYSIS

*Sufficiency of the Evidence*

An appellate court's standard of review when the defendant questions the sufficiency of the evidence on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, (1979). The appellate court does not reweigh the evidence; rather, it presumes that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the State. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions regarding witness credibility, conflicts in

testimony, and the weight and value to be given to evidence were resolved by the jury. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). "A verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, and [on appeal] the defendant has the burden of illustrating why the evidence is insufficient to support the jury's verdict." Id. (citing State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982)). "This [standard] applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence." State v. Pendergrass, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999).

Pursuant to Tennessee Code Annotated section 39-11-401, "[a] person is criminally responsible as a party to an offense, if the offense is committed by the person's own conduct, by the conduct of another for which the person is criminally responsible, or by both." As relevant to this case, a person is criminally responsible for an offense committed by another if "[a]cting with the intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the person . . . aids . . . another person to commit the offense." Tenn. Code Ann. § 39-11-402(2).

Aggravated robbery is the intentional or knowing theft of property accomplished with a deadly weapon. Tenn. Code Ann. § 39-13-402. A killing committed in the perpetration of or attempt to perpetrate robbery is felony murder. Tenn. Code Ann. § 39-13-202(a)(2). Further, the only mental state required to commit felony murder is the intent to commit the specific felony. Tenn. Code Ann. § 39-13-202(b).

Here, the Defendant contends that the evidence was insufficient because there was no evidence that he planned to rob the victims or that he even participated in the discussion to rob the victims. However, the Defendant was aware that Williams was armed and listened to Williams discuss his plan to rob the victims for their drugs and money. The Defendant told Williams he would act as a lookout and admitted that he hoped to be paid for doing so. He still expected to receive payment after hearing several gunshots and seeing Williams return to the vehicle with McCorkle's wallet. Further, the jury heard the recorded interview where the Defendant answered, "Yes," when asked if he hoped to receive payment for the robbery. Contrary to the Defendant's argument, there exists ample evidence for a reasonable trier of fact to conclude that he intended to and did assist Rodney Williams in committing aggravated robbery, making him criminally responsible for the robbery as well as the two murders under Tennessee Code Annotated section 39-11-402(2). Accordingly, we conclude that the evidence was sufficient to sustain the Defendant's convictions.

*Detective Peck's Opinion at Trial*

Next, the Defendant contends that the trial court erred by allowing Detective Peck to give his opinion as to the meaning of a recorded statement made by the Defendant and used as evidence at trial. The State responds that any error committed by the trial court in allowing Detective Peck to state his opinion was harmless. During the recorded interview, the Defendant was asked, "So when Rodney did the robbery, you were hoping to get paid from the robbery," to which he responded, "Yes." At trial, the State asked Detective Peck what that answer meant to him, and he stated, "That means to me that he's a willing participant."

The admissibility of a non-expert witness's testimony is to be primarily judged by the standard established in Rule 701 of the Tennessee Rules of Evidence. See State v. Justin Bradley Haynie, No. W2006-01840-CCA-R3-CD, 2007 WL 4335481, at *18 (Tenn. Crim. App. Dec. 7, 2007), perm. app. denied (Tenn. May 5, 2008). Rule 701 states:

> If a witness is not testifying as an expert, the witness's testimony in the form of opinions or inferences is limited to those opinions or inferences which are
>
> (1) rationally based on the perception of the witness and
>
> (2) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue.

Tenn. R. Evid. 701(a)(1)-(2). "Because it is the jury's duty to draw conclusions from the evidence presented, a 'non-expert witness must ordinarily confine his testimony to a narration of facts based on first-hand knowledge and avoid stating mere personal opinions." Justin Bradley Haynie, No. W2006-01840-CCA-R3-CD, 2007 WL 4335481, at *18 (quoting State v. Middlebrooks, 840 S.W.2d 317, 330 (Tenn. 1992)). "[T]he admission of lay opinion testimony is limited to those situations wherein the jury could not readily draw its own conclusions on the ultimate issue, without the aid of the witness's opinion testimony." State v. McCloud, No. E2008-01541-CCA-R3-CD, 2009 WL 1643445, at *12 (Tenn. Crim. App. June 12, 2009).

As Detective Peck was testifying as a non-expert witness, his opinion regarding the Defendant's statement was not admissible under Rule 701 of the Tennessee Rules of Evidence. Detective Peck's opinion was not helpful to a clear understanding of his testimony; the conversation was recorded and played for the jury, who were free to determine the meaning of the Defendant's statement on their own. Detective Peck's statement was an intrusion upon the jury's duty to form conclusions after weighing the evidence and is the type

of personal opinion by non-expert witnesses that Rule 701 seeks to eliminate. Tenn. R. Evid. 701(a)(1)-(2).

Our finding that the trial court erred in admitting Detective Peck's opinion does not end our analysis. As our supreme court has stated, "[a]ll errors are not the same, nor do they have the same effect on the judicial process in general or on a particular trial." State v. Rodriguez, 254 S.W.3d 361, 371 (Tenn. 2008). Accordingly, our supreme court "has recognized three categories of error-structural constitutional error, non-structural constitutional error, and non-constitutional error." Id. (citations omitted). As relevant to this issue, our supreme court has noted that "errors in the admission of evidence do not normally take on constitutional dimensions." Id. at 375 (citing State v. Powers, 101 S.W.3d 383, 397 (Tenn. 2003)).

In determining whether non-constitutional errors are harmless, "Tennessee law places the burden on the defendant who is seeking to invalidate his or her conviction to demonstrate that the error 'more probably than not affected the judgment or would result in prejudice to the judicial process.'" Id. at 372 (quoting Tenn. R. App. P. 36(b)). While substantial evidence of the defendant's guilt makes it difficult for "the defendant to demonstrate that a non-constitutional error involving a substantial right more probably than not affected the outcome of the trial," harmless error inquiry "does not turn upon the existence of sufficient evidence to affirm a conviction or even a belief that the jury's verdict is correct." Id. at 372. Rather, "the crucial consideration is what impact the error may reasonably be taken to have had on the jury's decision making." Id.

Here, the Defendant has not satisfied his burden of showing that Detective Peck's statement prejudiced the judicial process. The jury watched the interview in which the Defendant stated, "Yes," after being asked if he expected to receive payment from the robbery. The jury also heard the Defendant in the same interview admit that he knew Williams was armed and that he planned to rob the victims. Further, the Defendant admitted that he was acting as a lookout. The Defendant was convicted on a theory of criminal responsibility for another's actions, and there exists sufficient evidence to support a finding beyond a reasonable doubt that he assisted in the aggravated robbery with the intent to benefit in the proceeds. Considering the strength of the evidence against the Defendant, including the Defendant's statement, we cannot say that Detective Peck's statement more probably than not affected the final judgment. Detective Peck merely stated the obvious: that a person expecting to benefit from the proceeds of a robbery is a willing participant in the robbery. Accordingly, we conclude that the Defendant is not entitled to relief on this issue.

*Sentencing*

The Defendant next contends that the trial court erred in enhancing his sentence for aggravated robbery beyond the minimum in the range. The State responds that the trial court properly enhanced the Defendant's sentence.

An appellate court's review of sentencing is de novo on the record with a presumption that the trial court's determinations are correct. Tenn. Code Ann. §40-35-401(d) (2006). As the Sentencing Commission Comments to this section note, on appeal the burden is on the defendant to show that the sentence is improper. This means that if the trial court followed the statutory sentencing procedure, made findings of fact that are adequately supported in the record, and gave due consideration and proper weight to the factors and principles that are relevant to sentencing under the 1989 Sentencing Act, the court may not disturb the sentence even if a different result were preferred. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

In conducting its de novo review, the appellate court must consider (1) the evidence, if any, received at the trial and sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct, (5) any mitigating or statutory enhancement factors, (6) any statement that the defendant made on his own behalf, (7) the potential for rehabilitation or treatment, and (8) any statistical information provided by the Administrative Office of the Courts as to sentencing practices for similar offenses in Tennessee. Tenn. Code Ann. §§ 40-35-102, -103, -210; see also Ashby, 823 S.W.2d at 168; State v. Moss, 727 S.W.2d 229, 236-37 (Tenn. 1986).

The Defendant committed this offense on June 18, 2006; thus, he was sentenced under the revised sentencing act as enacted by the Tennessee General Assembly in 2005. The act provides that:

(c) The court shall impose a sentence within the range of punishment, determined by whether the defendant is a mitigated, standard, persistent, career, or repeat violent offender. In imposing a specific sentence within the range of punishment, the court shall consider, but is not bound by, the following advisory sentencing guidelines:

(1) The minimum sentence within the range of punishment is the sentence that should be imposed, because the general assembly

set the minimum length of sentence for each felony class to reflect the relative seriousness of each criminal offense in the felony classifications; and

(2) The sentence length within the range should be adjusted, as appropriate, by the presence or absence of mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114.

Tenn. Code Ann. 40-35-210(c)(1)-(2) (2006). "[A] trial court's weighing of various mitigating and enhancement factors has been left to the trial court's sound discretion;" therefore, the appellate court must not re-weigh such factors. State v. Carter, 254 S.W.3d 335, 345 (Tenn. 2008).

The appropriate sentence for a Range I offender convicted of aggravated robbery is eight to twelve years. Tenn. Code Ann. §§ 39-13-402; 40-35-112(a)(2). When sentencing the Defendant to eleven years for the aggravated robbery conviction, the court considered the Defendant's criminal history, the serious bodily injury endured by the victims, that the Defendant was on probation when the offense was committed, and that the Defendant had no hesitation in committing a crime when the risk to human life was great in accordance with Tennessee Code Annotated section 40-35-114. The court stated it gave "some" weight to the Defendant's remorse and his willingness to assist the authorities in solving the crime as mitigating factors.

The Defendant contends that the court erred in finding that he had no hesitation to commit a crime when the risk to human life was high. In support of his contention, the Defendant states that he never left the vehicle while the crimes were being committed. However, the Defendant remained in the vehicle with the purpose of acting as a lookout while Williams left the vehicle with a rifle to rob the victims. Although not argued by the Defendant, this particular enhancement factor is generally inapplicable to aggravated robbery convictions because a high risk to human life is inherent in the crime. State v. Eric DeWayne McElmore, No. 03C01-9802-CR-00056, 1999 WL 301489, at *4 (Tenn. Crim. App. May 14, 1999), perm. app. denied (Tenn. Nov. 22, 1999). The enhancement factor "might be applicable when the proof established the risk to the life of a person other than the victim." State v. Hicks, 868 S.W.2d 729, 732 (Tenn. Crim. App. 1993). However, this court has held the enhancement factor may not be applied if the other person put at risk by the Defendant's conduct is the victim of a separate crime involving risk to life for which the Defendant was convicted. See, e.g., State v. Tony E. Cannon, Jr., No. M2007-00557-CCA-R3-CD, 2008 WL 2448341 (Tenn. Crim. App. June 19, 2008). Here, the Defendant was convicted of the aggravated robbery of Ricky McCorkle. Although Marcus Edmondson was not a victim of the robbery because no property was taken from him, the Defendant was convicted of felony

murder for his conduct that endangered Edmondson's life. Therefore, we conclude that the trial court improperly applied this factor.

The Defendant also contends that the court erred in finding that he was on probation at the time of the offense in this case. The record reflects that the Defendant was convicted of an offense and sentenced to probation and that his probation was imposed on October 26, 2005 and expired on October 26, 2006. The Defendant committed these offenses on June 18, 2006; however, the Defendant argues that there is no evidence that he was still on probation at the time of these offenses. He offers no evidence to suggest that his probation had expired. Accordingly, we conclude that the record supports the trial court's finding that the Defendant was on probation when he committed these offenses.

Although the trial court erred in applying that the Defendant had no hesitation to commit a crime when the risk to human life was high as an enhancement factor, the erroneous application does not affect the length of sentence imposed in light of the remaining factors. The minimum sentence for an aggravated robbery conviction for a Range I offender is eight years and the maximum sentence is twelve years. The trial court sentenced the Defendant to eleven years for his aggravated robbery conviction. In determining his sentence, the trial court considered, in addition to the two factors the Defendant disputes, the serious bodily injury inflicted upon the victims and the Defendant's extensive criminal records. The court also considered two mitigating factors, the Defendant's remorse expressed at the sentencing hearing, and his willingness to assist authorities. After identifying and balancing the mitigating and enhancing factors, the court found that an eleven year sentence was appropriate for the Defendant's offenses. We cannot say that the Defendant's sentence is inappropriate because one enhancement factor was improperly applied when several other enhancement factors exist. Further, the Defendant was still sentenced below the maximum twelve years for a Range I offender convicted of aggravated assault. Therefore, we conclude that the record supports the imposition of a sentence three years above the minimum for aggravated robbery.

*Consecutive Sentencing*

The Defendant further contends that the trial court inappropriately imposed the sentence for aggravated robbery to run consecutively to the felony murder sentences. The State responds that the trial court properly imposed consecutive sentences.

Consecutive sentencing is guided by Tennessee Code Annotated section 40-35-115(b), which states, in pertinent part, that the trial court may order sentences to run consecutively if it finds by a preponderance of the evidence that "[t]he defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about

committing a crime in which the risk to human life is high" or "is sentenced for an offense committed while on probation." Tenn. Code Ann. § 40-35-115(b)(4), (6) (2006). When imposing consecutive sentences based on the defendant's status as a dangerous offender, the trial court must, "in addition to the application of general principles of sentencing," find "that an extended sentence is necessary to protect the public against further criminal conduct by the defendant and that the consecutive sentences must reasonably relate to the severity of the offenses committed." State v. Wilkerson, 905 S.W.2d 933, 939 (Tenn.1995). In all cases where consecutive sentences are imposed, the trial court is required to "specifically recite [on the record] the reasons" behind imposition of consecutive sentences. See Tenn. R. Crim. P. 32(c)(1); see, e.g., State v. Palmer, 10 S.W.3d 638, 647-48 (Tenn. Crim. App. 1999) (noting the requirements of Rule 32(c)(1) for purposes of consecutive sentencing).

Here, the trial court followed the appropriate guidelines for imposing consecutive sentences. The Defendant contends that the record does not support the trial court's finding that a consecutive sentence was necessary to protect the public and was reasonably related to the severity of the crime and that therefore, the court wrongly based the consecutive sentence on his being a dangerous offender. However, the trial court found that the Defendant had an increasingly severe criminal record that culminated in the loss of two human lives in this case. Further, the court also found that the Defendant was on probation at the time of these offenses. Only one factor is needed for the trial court to act within its discretion to impose consecutive sentences. See Tenn. Code Ann. § 40-35-115, Sentencing Comm'n Cmts; State v. Luis Castanon, No. M2003-01491-CCA-R3-CD, 2005 WL 544724, at *6 (Tenn. Crim. App. March 8, 2005), perm. app. denied (Tenn. Aug. 22, 2005). Following our review, we conclude that the record supports the trial court's finding that the Defendant was a dangerous offender and was on probation at the time of these offenses and that the imposition of consecutive sentences was appropriate.

## CONCLUSION

In consideration of the foregoing and the record as a whole, the judgments of the trial court are affirmed.

_____
D. KELLY THOMAS, JR., JUDGE